COMMONWEALTH *vs.* WALTER A. BOUTWELL.

Berkshire.  September 11, 1985. — December 10, 1985.

Present: GREANEY, C.J., BROWN, & SMITH, JJ.

*Constitutional Law,* Assistance of counsel. *Due Process of Law,* Appeal.
    *Practice, Criminal,* Assistance of counsel, Appeal, Hearing, New trial,
    Argument by counsel. *Evidence,* Admissions and confessions.

There was no error in a criminal case in the denial of the defendant's motion
    for leave to file a late notice of appeal, based on the contention that
    defense counsel's failure to claim a timely appeal had constituted inef-
    fective assistance of counsel, where the motion was filed more than a
    year after entry of judgment; and the denial of the motion did not deprive
    the defendant of due process of law, where all the issues that could have
    been raised on appeal from the judgment were presented to this court
    on appeal from the denial of the defendant's motion for a new trial.
    [204-206]
The judge in a criminal case did not abuse his discretion in denying the
    defendant's motion for an evidentiary hearing on his motion for a new
    trial. [206-207]
Where criminal charges against a defendant and two codefendants arose from
    a single incident, where each of the codefendants testified during the
    ensuing trial and thus could be cross-examined by defendant's counsel
    respecting out-of-court statements which had been admitted in evidence,
    and where the defendant's defense and that of a codefendant were not
    mutually antagonistic, despite certain differences in the trial tactics of
    respective counsel, the failure of defendant's counsel to move for sever-
    ance did not constitute ineffective assistance of counsel. [207-208]
Where in a criminal case there was no basis for the judge to suppress certain
    statements made by the defendant to police officers, defense counsel's
    failure to move to suppress the statements did not constitute ineffective
    assistance of counsel. [209]
At the trial of a defendant charged with kidnapping, aggravated rape, and
    other charges, at which there was overwhelming evidence that the defend-
    ant had participated in kidnapping the victim, defense counsel's tactical
    decision to contest the most serious charge against the defendant, aggra-
    vated rape, did not amount to ineffective assistance of counsel. [209-210]

INDICTMENTS found and returned in the Superior Court Department on November 10, 1981.

The cases were tried before *William W. Simons,* J., and motions for leave to claim a late appeal and for a new trial were heard by him.

*Donald A. Harwood* for the defendant.

*Daniel A. Ford,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On November 10, 1981, a Berkshire County grand jury returned five indictments against the defendant, Walter Boutwell, charging him with aggravated rape (G. L. c. 265, § 22[a]), kidnapping (G. L. c. 265, § 26), assault with a dangerous weapon (G. L. c. 265, § 15B), breaking and entering in the nighttime with intent to commit a felony and larceny (G. L. c. 266, §§ 16 and 30), entering in the nighttime without breaking with intent to commit a felony (G. L. c. 266, § 17). James Graham, Jr., and Donald Thomas were also indicted for the same crimes with the exception of entering in the nighttime without breaking. On February 10, 1982, after a joint trial, Boutwell was found guilty on all of the above indictments except the one charging him with entering in the nighttime without breaking.[1] On that charge, the judge allowed a motion for a required finding of not guilty. On the same day that he was convicted, the defendant was sentenced to a term of imprisonment. At that time he was notified of his right to appeal. Mass.R.Crim.P. 28(c), 378 Mass. 898 (1979). A notice of claim of appeal was never filed.[2]

On June 15, 1983, more than a year after the time that the defendant had been convicted and sentenced, his present counsel filed an appearance. He also brought a motion for leave to file a late notice of appeal. That motion was denied by the judge.

---

[1] Graham was also found guilty on the same charges. He appealed, and the judgments were affirmed by this court. *Commonwealth* v. *Graham,* 16 Mass. App. Ct. 1104 (1983). Thomas was found guilty of breaking and entering in the nighttime and acquitted on the other charges. He did not appeal from his conviction.

[2] The defendant did appeal his sentences to the appellate division of the Superior Court. G. L. c. 278, § 28B. After a hearing, the defendant's appeal was dismissed.

Appellate counsel then filed a motion for a new trial. In the motion, he alleged that the defendant was denied the effective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. He also charged several errors in the conduct of the trial, many of which were not the subject of objections at trial. Through additional motions appellate counsel requested an evidentiary hearing on his motion for a new trial and asked for reconsideration of his motion for leave to file a late appeal. After considering arguments of counsel, the trial judge denied all the motions. In a memorandum that accompanied his decision, the judge stated that he was not ruling on those matters raised for the first time after trial. The defendant has appealed from the denial of his motions. Before discussing his contentions, we summarize, as background for our analysis, facts that could have been found by the jury. We shall recite additional facts when we discuss the defendant's various claims.

The victim, a fifty-seven year old widow, lived in a mobile home in Pownal, Vermont, with her daughter and son-in-law. On November 2, 1981, she went to bed at approximately 11:00 P.M. and was awakened sometime later by the sound of someone crashing through the front door. She then saw two men standing in her bedroom, one holding a flashlight, the other carrying a gun. She noticed that the man with the flashlight, whom she later identified as the defendant, had his pants unzipped and that he was exposed. The defendant pushed the victim back onto her bed, jumped on top of her, and tried to lift up her nightgown. The victim began to scream and heard someone say "there [are] some other people here". The man with the gun then left the bedroom and went out into the living room, while the defendant stayed and punched the victim with his fists. The victim's daughter[3] and son-in-law tried to help the

---

[3] During the summer of 1981, the defendant was engaged in negotiations for the sale of a car with the former husband of the daughter of the victim. During the course of the conversation the defendant saw a picture of the victim's daughter and showed interest in her. There was evidence that, some time during the late summer or early fall of 1981, the defendant had gone to the victim's home in Vermont to see the car, and at that time had talked to the daughter.

victim but retreated to their bedroom when they were told by one of the intruders that they had guns. While in the bedroom they heard one of the men say, "CW we got to get going. They are going to call the cops."[4] At that point the defendant and another man dragged the victim out of the mobile home and into the back seat of their automobile.

Once in the automobile, the defendant got in the driver's seat, with Graham beside him in the front passenger seat and Thomas with the victim in the back seat. They drove back to Massachusetts. After they had been travelling for a while, the defendant asked Graham to take the wheel. He then climbed into the back seat and raped the victim. During the course of the rape, the automobile ran out of gas and came to a stop. The three men and the victim got out of the automobile. Graham and Thomas left to find gas and the defendant stayed behind with the victim. About ten minutes later, both men returned with a gas can and put gasoline into the automobile.[5] The three men then drove off leaving the victim. She walked to a nearby residence and awoke the inhabitants, who then telephoned the police. The police chased the defendant's vehicle but lost it. However, a police officer observed the automobile parked next to a barn. He noticed that the hood was warm, and the white vinyl top had been partially ripped off. Later the police were called to a nearby residence to answer a complaint that someone was trying to break into the house. The defendant was found, hiding underneath the porch and was arrested. We now discuss the defendant's contentions.

1. *The denial of the defendant's motion for leave to file a late notice of appeal.* The defendant claims that the judge erred in denying his motion for leave to file a late notice of appeal. He contends that the failure of trial counsel, upon request of the defendant, to file a timely notice of appeal constituted in-

---

[4] The defendant admitted that "CW" was his nickname and stood for "Crazy Walt."

[5] There was evidence that a storage shed was broken into and that the gas can was taken from it.

effective assistance of counsel and that the judge was required to allow his motion to file a late notice of appeal.[6]

Under the applicable appellate rule, a notice of appeal must be filed within thirty days after the guilty finding or within thirty days after the imposition of a sentence. Mass.R.A.P. 4(b), 378 Mass. 929 (1979). If the notice of appeal is not filed during that period, the trial court, upon a showing of excusable neglect, may extend the time for filing the notice of appeal for a period of time not to exceed thirty days. Mass.R.A.P. 4(c), as appearing in 378 Mass. 929 (1979). But it is clear that a trial judge does not have the power to permit a defendant to file a notice of appeal beyond the sixty-day period. *Commonwealth* v. *Lopes, ante* 11, 16 (1985).[7] Here, the defendant requested the judge's permission to file the notice of appeal well beyond the sixty-day period. The judge was correct in denying the motion.

The defendant claims that the denial of his motion violates the due process clause. The United States Supreme Court has recently addressed that issue. In *Evitts* v. *Lucey,* 469 U.S. 387 (1985), the defendant's counsel failed to file a "statement of appeal" as required by Kentucky law. As a result, the Kentucky Court of Appeals dismissed the defendant's appeal, and its action was affirmed by the Kentucky Supreme Court. The defendant appealed to the Federal courts. The Federal Court of Appeals ordered the Commonwealth of Kentucky either to reinstate the defendant's appeal or to retry him. The United

---

[6] In the affidavit that accompanied his motion, the defendant stated that he had told his trial attorney that he wanted to appeal his convictions and that he understood that his attorney would file the required notice of appeal. The Commonwealth did not file a counter affidavit. The judge did not make any finding in regard to the defendant's claims.

[7] The appellate courts or a single justice of those courts may enlarge the time for filing a notice of appeal in a criminal case up to one year from the date of the guilty finding or the date of the imposition of the sentences, but not beyond one year. Mass.R.A.P. 14(b), as appearing in 378 Mass. 939 (1979). *Miranda* v. *Commonwealth,* 392 Mass. 420, 421-422 (1984). "It may be that a single justice of the Supreme Judicial Court, acting under G. L. c. 211, § 3, and upon a showing of a meritorious case, can allow an appeal to be taken beyond the one-year period . . . ." *Commonwealth* v. *Lopes, supra.*

States Supreme Court affirmed that decision. *Evitts* v. *Lucey, supra.* In its decision, the Supreme Court held that, in certain circumstances, it is violative of a defendant's due process rights for the State to dismiss an appeal of right where the attorney for the defendant provided ineffective assistance of counsel in pursuing the appeal.

The decision of the Court in *Evitts* v. *Lucey, supra,* is not relevant to our discussion. Our holding that the judge was correct in denying the defendant's motion to file a late appeal does not cause the dismissal of the defendant's appeal, a result condemned in *Evitts.* The defendant has appealed from the denial of his motion for new trial. In that motion, he has incorporated all the issues that he would have raised if his claim of appeal had been filed in the regular course, and the defendant does not contend otherwise. On appeal, therefore, we are considering those issues that have been properly briefed which the defendant would have raised if his claim of appeal had been timely filed. Thus, his due process rights were not violated by the denial of his motion to file a late claim of appeal, even if we assume that his trial counsel provided ineffective assistance by not filing a claim of appeal.

2. *The denial of the motion for an evidentiary hearing.* The judge denied the defendant's motion for an evidentiary hearing regarding his new trial motion. The defendant argues that the judge's denial was error because his motion and accompanying affidavits raised substantial issues which required a hearing.

A judge may rule on the issues presented by a motion for a new trial "on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits." Mass.R.Crim.P. 30(c)(3), 378 Mass. 901 (1979). The decision whether it is necessary to hold an evidentiary hearing is left largely to the discretion of the judge. *Commonwealth* v. *Stewart,* 383 Mass. 253, 257 (1981). *Commonwealth* v. *Saarela,* 15 Mass. App. Ct. 403, 406 (1983). There was nothing contained in the motion or the affidavits that required the judge to hear oral testimony. The judge had presided over the defendant's trial. He was entitled to make use of his knowledge of what occurred at the trial. *Common-*

*wealth* v. *Little,* 384 Mass. 262, 269 (1981). There was no error in the denial of the motion.

3. *Ineffective assistance of counsel.* We now consider the several contentions raised by the defendant in attempting to establish that his trial counsel was ineffective. He argues that his attorney (1) failed to move for severance of the defendant's trial from those of his codefendants, (2) failed to file a motion to suppress the defendant's statements, (3) failed to make an effective closing argument, and (4) committed numerous errors during the trial involving tactics and strategy. In order to assess the worth of the defendant's claims, we "must examine 'whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence.'" *Commonwealth* v. *Westmoreland,* 388 Mass. 269, 273 (1983), quoting from *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). *Commonwealth* v. *Howell,* 394 Mass. 654, 657 (1985). *Commonwealth* v. *McGann,* 20 Mass. App. Ct. 59, 61-62 (1985). See *United States* v. *Cronic,* 466 U.S. 648, 657-662 (1984), and *Strickland* v. *Washington,* 466 U.S. 668, 687-691 (1984), for a similar if not identical standard.

a. *Failure to file severance motions.* Each of the three defendants made statements to the police in which he admitted going to the mobile home in Vermont with guns, being in the automobile with the victim, and participating in various degrees in the events that occurred on November 2, 1981. The defendant argues that the statements of the codefendants, especially the statement of Thomas, were so prejudicial to him that his trial counsel should have filed a severance motion. The defendant cites *Bruton* v. *United States,* 391 U.S. 123 (1968), as the basis for his argument. In *Bruton* the court held that it was a denial of the defendant's constitutional right of confrontation to admit a codefendant's confession inculpating the defendant when the codefendant did not take the stand and expose himself to cross-examination. However, "when the codefendant takes

the stand and is subject to cross-examination, a denial of the constitutional right of confrontation expressed in the *Bruton* case is not involved", and the *Bruton* doctrine does not apply. *Commonwealth* v. *Hicks,* 377 Mass. 1, 5 (1977), and cases cited. In this case, all three defendants testified and thus were available for cross-examination. Therefore, there was no violation of *Bruton.*

Another ground advanced by the defendant as a basis for his contention that trial counsel erred in not filing a severance motion was that his defense and the defense put forth by Thomas were mutually antagonistic. Generally, "[s]everance will not be granted due to inconsistent defenses unless the defendant demonstrates that the defenses are antagonistic to the point of being mutually exclusive . . . or that 'the prejudice resulting from a joint trial is so compelling that it prevents [the] defendant from obtaining a fair trial.'" *Commonwealth* v. *Dickerson,* 17 Mass. App. Ct. 960 (1983), quoting from *Commonwealth* v. *Moran,* 387 Mass. 644, 658 (1982).

The defendant has not demonstrated that his trial counsel was ineffective in failing to file a severance motion based on that ground. It was the Commonwealth's theory at trial that the defendant alone raped the victim and that the codefendants offered aid and assistance to the defendant. The defense offered by the defendant, at least as to the rape, was that he did not penetrate the victim. He did not claim that the other codefendants had raped the victim. Thomas' defense was that he was intoxicated during the entire evening, did not go into the mobile home and did not participate in any of the criminal acts that occurred on the evening in question. The record demonstrates that there were differences in trial tactics between the defendant's trial attorney and Thomas' attorney, but these differences fall short of producing that type of compelling prejudice which requires severance. Therefore, based on this record, the defendant's trial counsel did not demonstrate ineffectiveness in failing to file a severance motion.[8]

---

[8] We note that Thomas' attorney did file a severance motion which was denied by the judge.

b. *Failure to file suppression motion.* The defendant faults his trial counsel for failing to file a motion to suppress the two statements that he gave to the police about the events on the evening in question. The statements were introduced in evidence at trial as admissions of the defendant. He claims that his physical condition and degree of intoxication at the time that he gave the statements rendered them involuntary. The statements were taken about five hours apart. The defendant was advised of his Miranda rights. Both police officers who took the statements testified that in their opinion the defendant was sober at the times that he gave the statements. The police officers also testified that the defendant told them that he was in some pain from a fall from a tree. "The fact that a defendant's physical condition may be somewhat less than well" does not automatically make involuntary an otherwise voluntary statement. *Commonwealth* v. *Griffin,* 19 Mass. App. Ct. 174, 184 n.9 (1985). Also see *Commonwealth* v. *Wilborne,* 382 Mass. 241, 251-252 (1981). Moreover, there was testimony that, after falling from the tree, the defendant was seen running at such a rate of speed as to show that any injuries he may have incurred were not serious.

We are satisfied from our examination of the record that there was no basis for the judge to suppress the statements. The failure to file a motion to suppress is not ineffective assistance of counsel when there is nothing in the record to support the conclusion that the motion would have succeeded. *Commonwealth* v. *Festa,* 388 Mass. 513, 516 (1983).

c. *Claim that the performance of counsel at trial constituted ineffective assistance.* In addition to his complaints about his trial counsel's failure to file pretrial motions, the defendant also argues that the performance of his attorney at trial constituted ineffective assistance of counsel. His contentions are without merit. A review of the record readily demonstrates that "[t]he Commonwealth's case against the defendant was compelling, and trial counsel was left with few cards to play." *Commonwealth* v. *Domaingue,* 8 Mass. App. Ct. 228, 234 (1979). He was "faced with enormous difficulties not caused by any inadequacy on his part but rather by weakness in the

facts . . . ." *Commonwealth* v. *Walters,* 12 Mass. App. Ct. 389, 395 (1981). Because of the overwhelming evidence that the defendant had participated in the kidnapping of the victim from her home, trial counsel made the tactical decision to contest the most serious charge against the defendant, that of aggravated rape. "Review of tactical decisions is not . . . 'to be made with the advantage of hindsight, and any violation of the attorney's duty must be both substantial and prejudicial.'" *Commonwealth* v. *Williams,* 378 Mass. 217, 239 (1979), quoting from *Commonwealth* v. *Adams,* 374 Mass. 722, 729 (1978). Given the circumstances of this case, we do not think that trial counsel's strategy was "manifestly unreasonable." *Commonwealth* v. *Adams, supra* at 728.

In contesting the aggravated rape charge, trial counsel attempted to show that the defendant never penetrated the victim. In his closing argument trial counsel readily admitted that the victim had gone through a horrible ordeal and that, unlike the defendant, she had no reason to lie. Appellate counsel argues that this argument was self-defeating and damaged the defendant's case. Read in context, however, it is clear that counsel's argument was in line with his trial strategy. He argued to the jury that, although the victim was not lying in her testimony, she was confused and mistaken about whether or not she had been penetrated as a result of her horrible ordeal.

He emphasized that she had told both a police officer and a doctor, shortly after the incident, that she was not sure that she had been penetrated. In regard to the argument that the defendant had reason to lie, the record shows that counsel was merely reminding the jury that if they disbelieved the defendant's testimony, the burden was still on the Commonwealth to prove each and every element of the crimes beyond a reasonable doubt and that mere disbelief of the defendant's testimony would not carry that burden. Our review of the record does not show that trial counsel in his closing argument "impermissibly ignored the defendant's principal defense and indirectly conceded the guilt of his client." *Commonwealth* v. *Sarvela,* 16 Mass. App. Ct. 934, 935 (1983). Compare *Commonwealth* v. *Westmoreland,* 388 Mass. 269, 272-274 (1983), and *Commonwealth* v. *Street,* 388 Mass. 281, 284-287 (1983).

In addition to the above claims, appellate counsel has assembled in the defendant's brief what he describes as "numerous other errors" of trial counsel which he claims collectively deprived the defendant of the effective assistance of counsel. These "errors" are not sufficiently briefed within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *White,* 358 Mass. 488, 492 (1970). In any event, we have considered them and find that they are without merit.[9]

4. *Other issues raised by the defendant.* In his motion for a new trial, the defendant also raised several issues concerning alleged occurrences at trial. None of these matters was the subject of an objection by trial counsel. The judge, in deciding the defendant's motion, declined to consider any of these matters, noting that, after review of his trial notes, he believed that there was no substantial risk of a miscarriage of justice. We have examined the defendant's contentions and conclude that there was no error.

*Order denying motion for leave to appeal late affirmed.*

*Order denying motion for new trial affirmed.*

---

[9] One of the errors cited by the defendant does merit comment. The defendant contends that his trial counsel left the courtroom during a portion of the judge's instructions to the jury and returned prior to the conclusion of the charge. The record shows that the judge's charge covered some forty-three pages of the transcript. After the judge had addressed the jury for thirty-five pages, the defendant's trial counsel requested permission of the judge to approach the bench. The judge responded, "[I]n a minute." At the conclusion of the charge, the trial counsel apologized to the judge, stating that he had become "very ill."

The defendant was entitled to the assistance of counsel during the judge's instructions. We do not know, from this record, if trial counsel did leave the courtroom for a period of time during the charge. Assuming that trial counsel left the courtroom for a time, an assumption that may be unfair to the trial judge, we have examined the judge's charge with care and are satisfied that there was no error in his instructions to the jury.