STATE OF NORTH CAROLINA v. RONALD D. STANLEY

NO. COA10-1352

(Filed 19 July 2011)

**1. Criminal Law —restraints during trial—no abuse of discretion**

The trial court did not abuse its discretion by not removing defendant's handcuffs during trial. The trial court considered the proper factors, including defendant's past record, and reasoned that incarceration for crimes such as second-degree murder and kidnapping raised concerns for safety in the courtroom.

**2. Criminal Law— restraints during trial—no limiting instruction—no abuse of discretion**

There was no prejudicial error in a prosecution for possessing controlled substances in a prison where the trial court did not give a limiting instruction regarding defendant's courtroom restraints. Even if the instruction had been given, it was not reasonably possible that a different result would have been reached at trial.

**3. Evidence— hearsay—explanation of subsequent conduct**

Testimony from a correctional officer about a captain's statements about defendant explained the officer's subsequent conduct and were not hearsay.

Appeal by Defendant from judgment entered 8 June 2010 by Judge Paul L. Jones in Greene County Superior Court. Heard in the Court of Appeals 27 April 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Hilda Burnett-Baker, for the State.*

*Geoffrey W. Hosford, for Defendant-Appellant.*

HUNTER, JR., Robert N., Judge.

Ronald D. Stanley ("Defendant") appeals from a jury verdict finding him guilty of possession of a controlled substance on the premises of a penal institution. Defendant raises two issues on appeal. First, Defendant argues the trial court erred in not removing Defendant's handcuff restraints during his trial, and also erred in failing to give an instruction to the jury to not consider the restraints in determining Defendant's guilt or innocence; thus, the restraints prejudiced the jury, denying him a fair trial. Second, Defendant argues the trial court erred in admitting certain hearsay evidence. We find no error.

## I. Factual and Procedural History

On 8 March 2010, Defendant was indicted for possession of a controlled substance on the premises of a penal institution. At the trial court proceeding on 7 June 2010, Defendant pleaded not guilty. The State's evidence at trial tended to show the following:

On 28 September 2009, Sergeant Steven Byrd ("Sergeant Byrd") was employed as a correctional officer at Eastern Correctional Institution, a medium custody facility in Greene County.

On the afternoon of 28 September 2009, Sergeant Byrd received a phone call from his supervisor, Captain Bobby Summers ("Captain Summers") of the Department of Correction. Captain Summers asked Sergeant Byrd if he knew where Defendant was located. Sergeant Byrd replied that Defendant was probably on job assignment in the kitchen. Captain Summers asked Sergeant Byrd to search Defendant, because Captain Summers had received a tip that Defendant may have had some type of controlled substance or a cell phone. Sergeant Byrd went to find Defendant in the kitchen, but located him in the adjoining dining hall. Officer Kelvin Glover ("Officer Glover"), a fellow correctional officer, came to assist Sergeant Byrd and met him in the dining hall. Defendant was wearing a white t-shirt, white pants, work boots, and a "crown" (a crown is a hat worn by Rastafarians to symbolize their religion). Sergeant Byrd and Officer Glover walked Defendant back to Defendant's individual cell.

At Defendant's cell, Sergeant Byrd began to search Defendant. Sergeant Byrd started with Defendant's head. Defendant was asked to remove his crown and Sergeant Byrd searched the brim and headband. Sergeant Byrd worked his fingers around the headband until he felt a hard object and removed an object wrapped in cellophane through a hole in the headband. Sergeant Byrd did not know what the object was, but knew that Defendant was trying to conceal it by holding it in the headband of his crown.

The small object was forwarded to the North Carolina State Bureau of Investigation ("SBI"). Genard Patrick ("Patrick"), a forensic drug chemist with the SBI, tested the object and determined it to be .1 grams of crack cocaine.[1]

After finding the cocaine in Defendant's crown, Sergeant Byrd then asked Defendant to remove his "durag" (a head covering holding together his dreadlocks) and to shake his dreadlocks. As Defendant was shaking his dreadlocks, a burnt object wrapped in a piece of toilet paper fell onto the floor. The burnt object was described by Patrick as a partially consumed hand-rolled cigar containing brown and charred plant material. Patrick did not test the burnt object.

Sergeant Byrd continued with a search of Defendant's cell, where he found stamps in excess of the amount permitted, gambling sheets, and an additional crown that Defendant was not wearing. Sergeant

---

1. There is some evidentiary discrepancy regarding how the object was wrapped when it arrived for testing at the SBI. However, the chain of custody and the SBI test findings are not at issue on appeal.

Byrd searched the second crown in the same way he searched the first crown. During this search, Sergeant Byrd felt a flat, hard object in the headband. Sergeant Byrd did not see a hole in the crown that would allow him to remove the object and did not want to damage the crown due to its religious nature, so he handed the crown to Defendant to remove the object. Defendant took the crown, removed the hard object, and placed it in his hand. When Sergeant Byrd asked Defendant to hand the object to him, Defendant threw the object in his mouth. There was a small scuffle, and Officer Glover called a Code 4 disturbance.

At the beginning of Defendant's trial for possession of a controlled substance in prison, as the jury entered the courtroom, Defendant's counsel requested Defendant's handcuffs be removed. The trial judge denied the request. After jury venire was complete, and out of the presence of the jury, the trial judge explained that he denied the request because Defendant was too dangerous to be unsecured without handcuffs. He stated that he was concerned with the safety of the general public and court officials.

At the close of the State's evidence, Defendant moved to dismiss the charges against him. The trial court denied Defendant's motion to dismiss. Defendant did not offer any evidence, and renewed his motion to dismiss the charges; the trial court, again, denied the motion.

On 8 June 2010 a jury found Defendant guilty of possession of a controlled substance in a penal institution or local confinement facility. Defendant was sentenced to 12-15 months imprisonment to be served at the expiration of the sentence he was presently obligated to serve for previous convictions of kidnapping and second-degree murder.

## II. Jurisdiction and Standard of Review

As Defendant appeals from the final judgment of a superior court, this Court has jurisdiction to hear the appeal pursuant to N.C. Gen. Stat. § 7A-27(b) (2009).

We review the trial court's decision of whether to place Defendant in physical restraints for abuse of discretion. *State v. Forrest*, 168 N.C. App. 614, 620-21, 609 S.E.2d 241, 245 (2005); *State v. Tolley*, 290 N.C. 349, 369, 226 S.E.2d 353, 369 (1976). A review for abuse of discretion requires the reviewing court to determine whether the decision of the trial court is manifestly unsupported by reason, or so arbitrary that it cannot be the result of a reasoned decision. *State v. Locklear*, 331 N.C. 239, 248, 415 S.E.2d 726, 732 (1992).

We review for prejudicial error the trial court's decision not to provide a limiting instruction to "instruct the jurors that the restraint is not to be considered in weighing evidence or determining the issue of guilt" as required by N.C. Gen Stat. § 15A-1031 (2009). *See Tolley,* 290 N.C. at 373, 226 S.E.2d at 372-73; *State v. Simpson,* 153 N.C. App. 807, 809-10, 571 S.E.2d 274, 275-76 (2002) (finding no prejudicial error when the trial court failed to provide an instruction to the jury to disregard defendant's shackles when determining the issue of guilt); *State v. Thomas,* 134 N.C. App. 560, 570, 518 S.E.2d 222, 229 (1999); *State v. Wright,* 82 N.C. App. 450, 452, 346 S.E.2d 510, 511 (1986) (holding new trials are granted only for errors that are prejudicial). This Court considers whether there was a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial. *Glenn v. City of Raleigh,* 248 N.C. 378, 383, 103 S.E.2d 482, 487 (1958).

We review the trial court's decision to admit Sergeant Byrd's testimony concerning Captain Summers' out of court statements *de novo,* because Defendant properly objected to the admission of this evidence at trial. *State v. Wilkerson,* 363 N.C. 382, 434, 683 S.E.2d 174, 205 (2009) (holding the admissibility of evidence at trial is a question of law and is reviewed *de novo*). This Court, under a *de novo* standard of review, considers the matter anew and freely substitutes its own judgment for that of the trial court. *State v. Williams,* 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008).

### III. Analysis

**[1]** On appeal, Defendant contends the trial court abused its discretion by failing to remove Defendant's handcuff restraints during his trial because it denied Defendant any means of communication with his counsel. Defendant further contends the trial court committed prejudicial error by not providing a limiting instruction to the jury to not consider the restraints in determining Defendant's guilt or innocence. We disagree.

Our Supreme Court has stated that shackling of a defendant should be avoided because (1) it may interfere with the defendant's thought process or ability to communicate with counsel; (2) it may interfere with the dignity of the trial process; and (3) it is likely to create a prejudice in the minds of the jurors "suggesting that the defendant is an obviously bad and dangerous person whose guilt is a foregone conclusion." *Tolley,* 290 N.C. at 366, 226 S.E.2d at 367.

*Tolley* teaches us that compelling a defendant to stand trial while shackled can be prejudicial and thus infringes upon the presumption of innocence and interferes with whether a fair decision can be made on the question of guilt or innocence. *Id.* However, our Supreme Court has also noted that "[t]o say, as a general rule, that [a] trial in shackles is inherently prejudicial is not to conclude, however, that *every* such trial is fundamentally unfair." *Id.* at 367, 226 S.E.2d at 367. "A trial judge may order a defendant or witness subjected to physical restraint in the courtroom when the judge finds the restraint to be reasonably necessary to maintain order, prevent the defendant's escape, or provide for the safety of persons." N.C. Gen. Stat. § 15A-1031 (2009); *State v. Holmes*, 355 N.C. 719, 729, 565 S.E.2d 154, 162 (2002) (finding restraints reasonably necessary to maintain order when defendant's behavior was disruptive and assaultive).

A trial court may consider, amongst other things, a number of material circumstances when exercising its discretion:

> the seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

*Tolley*, 290 N.C. at 368, 226 S.E.2d at 368 (citations omitted).

The trial court ordered Defendant remain restrained throughout the duration of the trial because of "the custody level of Defendant, who [was] presently serving an active sentence for second-degree murder and kidnapping." The Court deemed it "too dangerous to have the defendant unsecured without cuffs in the Court" and made the decision "based on the safety of the general public and court officials." The trial court considered Defendant's past record in its determination to restrain Defendant and reasoned that incarceration for crimes such as second-degree murder and kidnapping raises concerns for safety in the courtroom. The record tends to show the trial court properly considered factors allowed under both the statute and *Tolley*. We find the trial court did not abuse its discretion in failing to remove Defendant's restraints.

**[2]** The trial judge is required to take a number of actions if he orders a defendant restrained:

> [H]e *must*: (1) Enter in the record out of the presence of the jury and in the presence of the person to be restrained and his counsel, if any, the reasons for his action; and (2) Give the restrained person an opportunity to object; *and* (3) *Unless the defendant or his attorney objects, instruct the jurors that the restraint is not to be considered in weighing evidence or determining the issue of guilt.* If the restrained person controverts the stated reasons for restraint, the judge must conduct a hearing and make findings of fact.

N.C. Gen. Stat. § 15A-1031 (2009) (emphasis added). Applying the factors to the facts at hand it is clear (1) that the judge entered into the record the reasons Defendant was restrained while out of the presence of the jury and in the presence of Defendant and his counsel and (2) gave Defendant an opportunity to object. Under the third statutory requirement, the trial court was required to give a limiting instruction to the jury to disregard the restraints when weighing the evidence and determining the issue of guilt. No such instruction was requested by Defendant and none was given by the court. Defendant's only request was for the judge to instruct the jurors that it was not sufficient to find Defendant guilty in the present case based on the fact that he is currently in prison. In agreement with Defendant, the trial judge gave the following instruction:

> Ladies and gentlemen, also in this case the defendant is in the North Carolina Department of Correction[] for some crime he may have committed in the past. You are not to hold that against him in any way. He does not forfeit his constitutional rights by virtue of the fact that he is a prisoner.

The trial court did not give the required instruction under N.C. Gen. Stat. § 15A-1031(3). However, in order for Defendant to receive a new trial, he must prove that this omission was prejudicial. In *Tolley* this same issue was raised. Our Supreme Court concluded no prejudicial error was committed.

> [D]efendant's contention that the trial judge erred in failing to instruct the jury to disregard the fact that defendant had been restrained with shackles throughout his trial cannot be sustained. While such an instruction would have been advisable, we decline to hold that the trial judge committed prejudicial error in failing

to give such an instruction on his own motion when none was requested by defendant. Defendant's failure to request appropriate cautionary instructions at trial had the effect, under the circumstances shown, of waiving as a basis for appeal the oversight of the trial judge now complained of.

*Tolley*, 290 N.C. at 371, 226 S.E.2d at 369-70 (internal citations omitted). While *Tolley* predates the passage of N.C. Gen. Stat. § 15A-1031(3), its teaching is applicable herein and we are bound by its holding. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

Even if the judge had given the jury instruction regarding the restraints, it is not reasonably possible that a different result would have been reached at trial. *See Thomas*, 134 N.C. App. at 570, 518 S.E.2d at 229 (finding no prejudice when Defendant appeared before jury in shackles due to overwhelming evidence offered by the State to support the conviction). A forensic drug chemist with the SBI testified that the substance found on Defendant was crack cocaine, and two witnesses testified the cocaine was found on Defendant's person. Additionally, due to the nature of the charge, the jury was already aware Defendant was incarcerated. While the instruction given to the jury was not sufficient to comply with N.C. Gen. Stat. § 15A-1031, it did further ameliorate any prejudice to Defendant in regards to his status as a current prisoner. For these reasons, we find no prejudicial error by the trial court in not giving the statutorily required instruction, as we find no reasonable possibility that the instruction would have resulted in a different outcome. *Id.*

[3] The second issue Defendant raises is that the trial court erred in admitting hearsay testimony by Sergeant Byrd regarding statements Captain Summers made to him. Defendant further argues that even if the trial court properly admitted the statements as non-hearsay evidence, the court erred when it did not provide the jury with a limiting instruction. We find Sergeant Byrd's testimony was not hearsay, and therefore do not reach the question of a limiting instruction.

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c). Statements by someone other than a witness offered for a purpose other than the truth of the matter asserted are not considered hearsay and are admissible. *State v. Coffey*, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990). Specifically, "statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made." *Id.*

STATE v. STANLEY

[213 N.C. App. 545 (2011)]

The following exchange occurred at trial:

[Prosecutor]: Around the four o'clock hour, did you receive any kind of orders from any of these superior officers?

Sergeant Byrd: Yes, sir.

[Prosecutor]: Okay. What order and from what officer did you receive it?

Sergeant Byrd: I received a call from Captain Summers at about 4:10 p.m. and he asked did I know who Inmate Ronald Stanley was and I said yes. He asked me did I know where he was at and I said he's probably at his job —

[Defense Counsel]: Objection to what Captain Summers said.

Sergeant Byrd:—assignment which is in the kitchen.

The Court: Hold on.

[Prosecutor]: Captain Summers is going to testify.

[Defense Counsel]: To the extent he's able to corroborate that, Your Honor. We would object at this time.

The Court: Okay. Overruled.

[Prosecutor]: And what was your direction from Captain Summers? What was he saying? You can answer the question.

Sergeant Byrd: He asked me did I know who Inmate Stanley was and I said yes I do. He asked me was he on the unit. I said no he's not, he's probably at his job assignment.

The record tends to show that Sergeant Byrd testified to Captain Summers' statements to explain why Sergeant Byrd sought out and performed a search of Defendant and his cell. Sergeant Byrd's testimony regarding Captain Summers' statement was used to explain Sergeant Byrd's subsequent conduct. Therefore, the statements were not offered for the truth of the matter asserted.

Because we determine Sergeant Byrd's statements were not hearsay, we do not address Defendant's argument regarding a limiting instruction.

## IV. Conclusion

We conclude the trial court did not abuse its discretion in ordering Defendant be physically restrained during the trial. We find under these circumstances no prejudicial error where the trial court failed

WAYNE ST. MOBILE HOME PARK, LLC v. N. BRUNSWICK SANITARY DIST.

[213 N.C. App. 554 (2011)]

to provide a limiting instruction regarding the jury's consideration of the restraints when determining Defendant's guilt. Additionally, the trial court properly admitted Sergeant Byrd's testimony about Captain Summers' out of court statements for the purpose of explaining Sergeant Byrd's subsequent conduct.

No error.

Judges STEELMAN and STEPHENS concur.